# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| DAKOTA, MINNESOTA & EASTERN RAILROAD CORPORATION, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> INGRAM BARGE COMPANY, <br><br> Defendant. | No. C15-1038-LTS <br><br> **ORDER ON** <br> **MOTION IN LIMINE** |

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 29) in limine through which plaintiff Dakota, Minnesota & Eastern Railroad Corporation (DME) seeks to exclude the testimony of an expert witness. Defendant Ingram Barge Company (Ingram) has filed a resistance (Doc. No. 31) and DME has filed a reply (Doc. No. 33). Oral argument is not necessary.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from two allisions[1] on the Upper Mississippi River. Plaintiffs DME and Soo Line Railroad Company (Soo) commenced this action in admiralty on December 10, 2015, by filing a complaint (Doc. No. 2) against Ingram. In general, plaintiffs allege that DME owns the Sabula Bridge, a railroad bridge that crosses the Upper Mississippi River near mile 535.0, and that Soo owns the LaCrosse Bridge, a

---

[1] An "allision" is an admiralty term for the occurrence of a vessel striking a bridge. *See, e.g., I&M Rail Link, LLC v. Northstar Navigation, Inc.*, 198 F.3d 102, 103 (7th Cir. 2000).

railroad bridge that crosses the Upper Mississippi River near mile 699.8.[2] They further allege that Ingram is in the business of transporting barges on the Upper Mississippi River and elsewhere.

In their First Claim for Relief, plaintiffs allege that on April 24, 2015, Ingram was operating the M/V Aubrey B Harwell Jr while pushing barges upstream when one or more of the barges struck appurtenant structures of the Sabula Bridge. In their Second Claim for Relief, plaintiffs allege that on September 7, 2015, Ingram was operating the M/V Kim W Nowell while pushing barges downstream when one or more of the barges struck appurtenant structures of the LaCrosse Bridge. With regard to both incidents, plaintiffs make various allegations of fault and negligence on the part of Ingram and the captains, pilots and crews of the respective vessels. Plaintiffs request judgment in an amount sufficient to compensate them for the resulting damages.

Ingram filed an answer (Doc. No. 13) on January 25, 2016, in which it denied liability to either plaintiff and raised various defenses, including comparative fault. During discovery, Ingram designated Dana A. Goward, a retired captain of the United States Coast Guard, as a witness who will provide expert opinion testimony at trial. DME now seeks to exclude Goward's testimony. The bench trial in this matter is scheduled to begin on November 28, 2017.

### III.   APPLICABLE STANDARDS

Federal Rule of Evidence 702 governs the admission of expert testimony. The rule states that a qualified expert may testify "in the form of an opinion or otherwise" if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

---

[2] DME is a subsidiary of Soo which, in turn, is a subsidiary of Canadian Pacific Railway Limited. Doc. No. 4.

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702. To be admissible, expert testimony must be both relevant and reliable. *Weisgram v. Marley Co.*, 169 F.3d 514, 517 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000). Evidence is relevant if it tends to make a fact more or less probable and is of consequence in determining the action. Fed. R. Evid. 401. Evidence is reliable if it is useful to the finder of fact in deciding an ultimate issue of fact, the expert is qualified and the evidence used by the expert is reliable. *Peters v. Woodbury Cty., Iowa*, 979 F. Supp. 2d 909, 919 (N.D. Iowa 2013), *aff'd sub nom. Peters v. Risdal*, 786 F.3d 1095 (8th Cir. 2015). The trial court has broad discretion when determining the reliability of expert testimony. *United States v. Vesey*, 338 F.3d 912, 916 (8th Cir. 2003). Doubts on whether the testimony will be helpful should be resolved in favor of admissibility. *Peters*, 979 F. Supp. 2d at 919, quoting *Larabee v. MM&L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990).

Federal Rule of Evidence 704(a) provides that expert evidence is admissible even if it embraces an ultimate issue in the case. Fed. R. Evid. 704(a). However, opinions that merely tell the trier of fact what result to reach are not admissible. *Langenbau v. Med-trans Corp.*, 167 F. Supp. 3d 983, 995 (N.D. Iowa 2016); *Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010). Generally, questions of law are not a proper subject of expert testimony. *United States v. Klaphake*, 64 F.3d 435, 438–39 (8th Cir. 1995). If an expert's testimony is "so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be," it is inadmissible. *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court must perform a "gatekeeping function" to ensure that irrelevant or unreliable expert testimony is not introduced into evidence. *See, e.g., In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F3d 604, 613 (8th Cir. 2001). However, the Eighth

Circuit Court of Appeals has explained that this concern is not paramount when the case will be tried to the court, rather than to a jury:

> The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony. That interest is not implicated at the class certification stage where the judge is the decision maker. The district court's "gatekeeping function" under *Daubert* ensures that expert evidence "submitted to the jury" is sufficiently relevant and reliable, *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (emphasis added), but "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself," *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). Similar reasons support less stringent application of *Daubert* in bench trials. *See* Charles Alan Wright, Victor James Gold, 29 Fed. Prac. & Proc. Evid. § 6266, n. 90.2 (2010), and cases cited. The "usual concerns of the [*Daubert*] rule—keeping unreliable expert testimony from the jury—are not present in such a setting." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010).

*Id*.

## IV. DISCUSSION

Goward worked for the Coast Guard's Senior Executive Service. Doc. No. 29-2 at 3, 9–10. In 1996, the Coast Guard designated the Sabula Bridge as "an unreasonable obstruction to navigation" and issued an Order to Alter, pursuant to the Truman-Hobbs Act. Doc. No. 27. Goward's testimony relates to those procedures and the designation of the Sabula Bridge as an unreasonable obstruction. Doc. No. 29-2.

DME structures its arguments for excluding the testimony by breaking Goward's report into sections. Ingram's resistance does not correspond with the sections discussed by DME, but rather addresses the testimony as a whole. I have addressed the specific sections identified by DME below, while attempting to address Ingram's corresponding arguments as to each section.

4

### A. *Goward's opinion that the Sabula Bridge owners must bear responsibility for any and all damage*

The first paragraph of Goward's report presents the conclusion that, absent "willful negligence or malicious intent" of the towboat pilot, the Sabula Bridge owners should bear responsibility for "any and all damage to the bridge and vessels resulting from allisions since August 14th, 1996." Doc. 29-2 at 4. DME argues that Goward's opinion is inadmissible because it is not helpful and attempts to instruct the court on the proper legal standard. Doc. No. 29-1 at 5. Ingram responds by arguing that this opinion addresses the industry standard of care by concluding that "[t]he bridge owner has knowingly maintained a safety hazard, and the pilot" is not culpable, which is admissible and relevant to DME's comparative fault. Doc. No. 31 at 8.

Despite Ingram's characterization, this opinion by Goward simply states what he believes the result of the case should be. It is unclear what industry standard he is applying and how it is different from the legal standard that applies to this case. I further find that this opinion is unhelpful to the trier of fact. Because this opinion is nothing more than Goward's view of the appropriate outcome of the case, I will grant DME's motion with respect to testimony addressing this section of Goward's report.

### B. *Goward's opinion regarding appropriate and necessary deference to maritime traffic*

The next section of Goward's report has multiple bullet points explaining why "[t]he Congress and the law gives deference to maritime traffic." Doc. 29-2 at 4. DME argues that this part of Goward's opinion is irrelevant and unhelpful, does not rely on sufficient facts or data and is not based on reliable principles or methods. Doc. No. 29-1 at 5–6. DME claims this section does nothing more than tell the court to favor Ingram because it is in the maritime industry. *Id.* at 6.

Ingram presents no argument regarding the relevancy of this portion of Goward's report. I agree with DME that whether or not Congress gives deference to maritime

traffic is not relevant. Goward's statements (1) that it is generally more difficult for humans to alter waterways than to alter bridges, (2) that waterways are "the nation's preferred method for moving cargo" and (3) that maritime transport was in place before railroads existed do not make any disputed material fact more or less true. Therefore, there is no need to address the reliability or helpfulness of these statements. I grant DME's motion to exclude Dana Goward's testimony with respect to this section of his report.

C. *Goward's opinions on bridges as obstructions, alteration of bridges, and the Sabula Bridge*

The third section with which DME takes issue makes up the bulk of Goward's report. This section details some of the reasons the Coast Guard may designate a bridge an "unreasonable obstruction," the process for designating it as such, data on past bridge alterations and the history of the Sabula Bridge (particularly since being designated as an unreasonable obstruction). Doc. No. 29-2 at 5–6.

DME argues that these portions of the report are inadmissible because Goward is offering an opinion as to DME's legal duty, largely that DME had a legal duty to fully replace the Sabula Bridge. Doc. No. 29-1 at 7–8. DME also argues that the opinions are not a product of reliable principles because they do not cite authority and contradict established law. *Id.* at 8–9. DME claims Goward is improperly trying to impose both a common law duty and a statutory duty that does not exist. *Id.* at 9 – 14.

Ingram responds by arguing that Goward is addressing DME's comparative fault, not the legal duty imposed. Doc. No. 31 at 7–8. Ingram contends that Goward is providing insight into the process, meaning and effect of an "unreasonable obstruction" finding as well as the funding mechanisms involved in bridge alterations. *Id.* Ingram further argues that Goward's opinion goes towards DME's knowledge of hazards as well

6

as the standards of reasonableness for bridge owners, from the Coast Guard's perspective. *Id.* at 6. I will address DME's arguments as to this section separately.

### 1. *Impermissible legal opinion*

Expert testimony that simply describes what the witness believes the outcome should be, what the law should be or whether a party violated the law is inadmissible. *Peters*, 979 F. Supp. 2d at 922. However, expert witnesses can testify as to specific industry procedures and practices. *Id.* at 921–22; *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). An expert's testimony may encompass an ultimate issue of fact, such as what the applicable industry standards are and whether those standards were met in the incident at issue. But an expert cannot testify as to whether or not the parties failed to meet the applicable *legal* standard. *Peters*, 979 F. Supp. 2d at 922–23.

The "Bridges as Obstructions" portion of this report touches on a variety of issues. It describes environmental changes that may cause a bridge to become an unreasonable obstruction, addresses the general process for designating it as such, discusses the resources that are used during the process and provides statistical information as to how many bridges are designated as unreasonable. Doc. No. 29-2 at 4–5. The "Alteration of Bridges in the United States" portion gives numerical data about the state of bridges across the United States. *Id.* at 5. The "Sabula Bridge" section discusses the steps the bridge's owner has or has not taken in response to the Coast Guard's "unreasonable obstruction" designation and the owner's apparent knowledge of the appropriate procedures. *Id.* at 5–6.

Nothing in these sections of Goward's report equates to an opinion that DME has a legal duty to fully replace the bridge. Nor does Goward opine that DME was negligent. Instead, he addresses the Coast Guard's process in designating a bridge as an unreasonable obstruction and describes what the owner of the Sabula Bridge could have done after the designation. All of this appears to be relevant, factual, industry-specific

7

information. For the most part, testimony consistent with this portion of Goward's report is not subject to exclusion on the basis of providing impermissible legal opinions.

The only questionable statements in this section of the report are those in which Goward recites statutory or regulatory text (i.e., 33 U.S.C. § 514 and 33 C.F.R. § 116.40). He then sets forth his knowledge of what the bridge owner did, or did not do, in relation to the cited legal authorities. Experts cannot give opinions as to the applicable law, or as to whether a party met or failed to meet applicable legal standards. *Peters*, 979 F. Supp. 2d at 921–22. It is for the court, not an expert witness, to determine which legal requirements apply and whether the applicable requirements were met. As such, I will grant DME's motion with respect to Goward's testimony about applicable law and any compliance or non-compliance with that law.

## 2.     *Reliability*

DME argues that Goward's opinions, as set forth in this section of his report, are unreliable because they contradict established law. "An expert's testimony may be excluded on 'reliability' grounds if it is 'so fundamentally unsupported that it can offer no assistance to the jury.'" *Peters*, 979 F. Supp. 2d at 920 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)). According to his deposition testimony, Goward relied on a number of documents of significant length to form his report. Doc. No. 29-2 at 20–21. Further, he supervised the Coast Guard's bridge administration program for three years and served as the Senior U.S. Coast Guard Hearing Officer for about a year. *Id.* at 3. As a general matter, I cannot find that his testimony is "so fundamentally unsupported" that it is of no help to the trier of fact.

As for DME's argument that Goward's opinions contradict established law, that argument rests on the assumption that Goward will testify that DME had a legal duty to replace the bridge. As noted above, I see nothing in this section of the report to suggest that Goward intends to testify to the existence of a legal duty. Rather, he discusses industry standards and data relating to the Coast Guard's designations of unreasonable

obstructions. However, I will briefly address DME's argument that his testimony conflicts with existing law.

DME contends the law establishes that "a bridge which is an approved structure pursuant to Congressional authority cannot be held to be an unreasonable obstruction by any court under maritime law." Doc. No. 29-1 at 9. Therefore, according to DME any testimony regarding the duty to alter a bridge that is the subject of an Order to Alter is inadmissible. *Id.* at 9–10. DME cites *California v. Sierra Club*, 451 U.S. 287 (1981), as establishing that there is no common law duty for a railroad to remove a bridge in navigable waters. In *Sierra Club*, the respondents claimed a private right of action under the Rivers and Harbors Appropriation Act and sought to enjoin the construction and operation of water diversion facilities. *Id.* at 289-90. While the act did not explicitly create an avenue for private enforcement, respondents relied on Section 10 of the act, which prohibited the creation of any obstruction to "the navigable capacity" of waters in the United States without Congressional approval. *Id.*

In the course of rejecting this argument, the Court noted that "in the absence of specific legislation no party, including the Federal Government, would be empowered to take any action under federal law with respect to [obstructions on navigable rivers caused by bridges and similar structures]." *Id.* at 295. Thus, *Sierra Club* establishes that there is no federal common law prohibiting obstructions and nuisances in navigable waters. However, the lack of such common law authority does not preclude a finding that a bridge owner may be at fault in an allision case, nor does it render testimony about procedures under the Truman-Hobbs Act unreliable.

DME also cites *Union Pac. R. Co. v. Kirby Inland Marine, Inc. of Mississippi*, 296 F.3d 671 (8th Cir. 2002), which held that there is no duty under the Truman-Hobbs Act to alter a bridge that is the subject of a Truman-Hobbs report and Order to Alter. Doc. No. 29-1 at 10. This holding does not make Goward's testimony unreliable. In *Union Pacific*, the narrow legal issue decided was whether a Truman-Hobbs finding that a bridge was an unreasonable obstruction eliminated the standard presumption in allision

cases that the barge crew's negligence caused the incident. *Id.* at 673. The court found that the Truman-Hobbs finding did not negate the presumption as a matter of law. *Id.* at 678. However, the court also held that evidence relating to the Order to Alter was admissible and that it was for the trier of fact to determine whether that Order rebutted the presumption. *Id.* at 676–77, 79.

Here, Goward's report does not state an opinion that the Sabula Bridge owner had a duty to replace the bridge simply because the bridge was designated an unreasonable obstruction. Because *Union Pacific* demonstrates that evidence relating to such a designation may be admitted to rebut the presumption of negligence on the part of the barge crew, Goward's report does not contradict established law and is not unreliable. Therefore, I deny DME's motion to exclude testimony on this section of Goward's report.

### D. *Goward's opinions on navigating the Sabula Bridge and the Coast Guard's investigation*

The final portion of Goward's report that DME addresses focuses specifically on the Sabula Bridge. In this section, Goward lists the data he reviewed, including the Coast Guard's Marine Casualty Incident Report (MCIR) for the allision at issue, explains what the report entails and concludes that the investigating officers would require exceptional evidence to find the tug pilot responsible. Doc. No. 29-2 at 6–7. He also provides data as to the number of past allisions with the Sabula Bridge. *Id.*

DME contends these sections are inadmissible because they are "an end-run around" a statute and regulation prohibiting Coast Guard marine investigations from being admitted as evidence. Doc. No. 29-1 at 14. DME also claims that admitting evidence of the other incidents violates Federal Rule of Evidence 404, which prohibits evidence of prior bad acts. *Id.* at 15. Finally, DME claims Goward used unreliable methodology when reaching the conclusions contained in this section of the report. *Id.* at 16.

Ingram argues that the statute precluding admission of the Coast Guard's evaluation only applies to the MCIR itself, not to an expert opinion that relies on the report. Doc. No. 31 at 9. Further, Ingram contends that any testimony regarding the agency's policy on not prosecuting pilot error in these circumstances is relevant and appropriate. *Id.* Ingram also argues that any evidence of other incidents will be offered to show DME's knowledge of the bridge's condition and opportunity to correct it, which is admissible under Federal Rule of Evidence 404(b). Doc. No. 31 at 6.

### 1. *The statutory argument*

DME relies on a statute, 46 U.S.C. § 6308, and a regulation, 46 C.F.R. § 4.07-1(b). The statute states, in relevant part, that notwithstanding other law, "no part of a report of a marine casualty investigation . . . shall be admissible as evidence or subject to discovery in any civil or administrative proceedings." The regulation provides, in relevant part, that "investigations of marine casualties and accidents . . . are not intended to fix civil or criminal responsibility."

Contrary to Ingram's argument, these provisions do more than simply preclude admission of the physical copy of an MCIR. In *United States v. Egan Marine Corp.*, 808 F. Supp. 2d 1065, 1076 (N.D. Ill. 2011), the court stated that "an expert report that simply cites or references an MCIR is not necessarily inadmissible, nor is the expert automatically barred from testifying." *Id.* at 1074 (citing *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. 03–1230, 2004 U.S. Dist. LEXIS 6900, at *4 (E.D. La. Apr. 19, 2004)). The court further explained that "[a] conclusion that does not rely on and is not substantially based on the MCIR is admissible, as long as any references to the MCIR are stricken." *Id.* Applying this standard, the court struck portions of expert reports that relied on findings contained in an MCIR. *Id.* at 1075-76. The court noted that witness testimony cannot be used as "a means to insert the findings of the MCIR as a material fact." *Id.* at 1076–77.

11

I adopt the legal framework set forth in *Egan Marine*. As such, Goward's anticipated testimony is improper to the extent that Goward either (a) seeks to insert an MCIR's findings into the evidentiary record or (b) seeks to offer opinions or conclusions that are based on the contents of an MCIR. Ingram, however, argues that Goward's testimony is admissible because the content from such reports is allowed for impeachment purposes. Doc. No. 310 at 9 (citing *In re Complaint of Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783, 786 (E.D. La. 2003)). While that may be true, Ingram is not proposing to use the contents of an MCIR to impeach a witness. Instead, those contents form the basis of some of Goward's conclusions. In the "Navigating Through This Bridge" section, for example, Goward quotes a portion of a 2001 MCIR to support his conclusion that "investigating officers require exceptional evidence" to find the barge pilot responsible. Doc. No. 29-2 at 6. Under the heading "U.S. Coast Guard Investigation of This Incident," Goward states that he used a copy of the MCIR for the allision at issue to conclude: (a) "the investigators regarded this as a fairly routine case" and (b) based on the lack of recommendations in the report, the investigators did not believe the barge pilot and crew were negligent. Doc. No. 29-2 at 7.

Testimony about, or based on, the content of an MCIR is improper. *See Egan Marine*, 808 F. Supp. 2d 1065; *see also In re Complaint of Crosby Tugs, L. L. C.*, No. CIV.A.02-1125C/W, 2004 WL 5482859, at *2 (E.D. La. Aug. 16, 2004). Goward may testify as to his experience and the standards used in investigating similar incidents. *See Vesey*, 338 F.3d at 917. But he may not testify as to facts contained in, or conclusions drawn from, any MCIR report.

### 2. *Rule 404 and Reliability*

Federal Rule of Evidence 404(b)(1) prohibits a party from introducing evidence of the other party's crime, wrong, or other act to show that person acted in conformity therewith. However, Rule 404(b)(2) allows such evidence if used for another purpose, such as to prove motive, opportunity, intent, preparation, or knowledge. The Eighth

Circuit has stated that Rule 404(b) evidence is admissible if: (1) the evidence is relevant to a material issue, (2) the prior acts are proven by a preponderance of the evidence, (2) the evidence is more probative than prejudicial, (4) and the prior acts are similar in kind and close in time to the charged offense. *Langenbau*, 167 F. Supp. 3d at 1003.

Here, I am not convinced that prior incidents involving the Sabula Bridge are other crimes, wrong or other acts of DME, such as to fall within the scope of Rule 404. Even if they are however, evidence of such incidents does not go to the issue of whether DME "acted in conformity" with regard to this allusion. Instead, it goes to DME's knowledge of the bridge's condition. Thus, I find that evidence of prior incidents involving the bridge is not subject to exclusion under Rule 404. Consistent with the discussion above, however, Goward will not be permitted to rely on information contained in any MCIR when testifying about any prior incidents.

As for reliability, DME raises a number of issues concerning the validity of the conclusions Goward draws from his review of prior incidents. For example, Goward testified during his deposition that he did not investigate the details of the previous incidents, did not determine the extent of the damage or determine which parts of the bridge were involved. Doc. No. 29-2 at 65–66. I find that those issues go to the weight of Goward's conclusions, not to the admissibility of those conclusions. DME is free to attack Goward's testimony with cross-examination and contrary evidence. *See Langenbau*, 167 F. Supp. 2d at 996; *Daubert*, 509 U.S. at 596. DME has not shown that Goward's opinions are so unreliable as to support their exclusion.

## V. CONCLUSION

Because this will be a bench trial, there is a very limited need to determine in advance which expert witness opinions are, or are not, admissible. Thus, my general approach will be to allow Goward to testify, subject to any objection, in order for a complete record to be made. If this approach results in some testimony that is not appropriate for expert witness testimony, such as opinions of a legal nature, any error

13

will be harmless. However, some topics of Goward's proposed testimony are so clearly off-limits as to require exclusion. As such, DME's motion (Doc. No. 29) is **granted in part** and **denied in part**, as set forth in this order.

**IT IS SO ORDERED.**

**DATED** this 6th day of November, 2017.

_____
Leonard T. Strand, Chief Judge